CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
11/30/2020
JULIA C. DUDLEY, CLERK
BY:   s/ CARMEN AMOS
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

TAMMY J., o/b/o H.J.,[1]

*Plaintiff,*

v.

ANDREW SAUL, *Commissioner, Social Security Administration,*

*Defendant.*

CASE NO. 6:19-cv-00046

MEMORANDUM OPINION

JUDGE NORMAN K. MOON

Plaintiff Tammy J., on behalf of H.J., her minor child, filed this action challenging the Commissioner of Social Security's final finding that H.J. is not disabled and accordingly not entitled to supplemental social security income ("SSI") benefits under the Social Security Act. 42 U.S.C. §§ 1381, *et seq.*

Pursuant to Standing Order 2011-17 and 28 U.S.C. § 636(b)(1)(B), the Court referred this matter to U.S. Magistrate Judge Robert S. Ballou for proposed findings of fact and a recommended disposition. The parties have filed cross motions for summary judgment, Dkts. 14, 18, and Judge Ballou issued a Report & Recommendation ("R&R"), which recommended that the Court deny Plaintiff's motion for summary judgment and grant the Commissioner's. Dkt. 22. Considering the R&R, Plaintiff's objections and the Commissioner's response, Dkts. 23, 24, and the administrative record, the Court finds Plaintiff's objections lack merit. The Court will adopt the R&R and award summary judgment to the Commissioner.

---

[1] The Court adopts the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts only use the first name and last initial of the claimant in social security opinions.

1

Standard of Review

The Court conducts a de novo review of those portions of the R&R to which Plaintiff objects. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

When examining a Social Security Administration ("SSA") disability determination, the reviewing court must uphold factual findings of the Administrative Law Judge ("ALJ") if they are supported by substantial evidence and were reached under application of the correct legal standard. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012). The "threshold for such evidentiary sufficiency is not high" under this standard. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

Substantial evidence is more than a mere scintilla—but less than a preponderance—of the evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Biestek*, 139 S. Ct. at 1154 ("more than a mere scintilla"). A finding is supported by substantial evidence if it is based on "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). Where "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the Court must defer to the ALJ's decision. *Id.* Moreover, the reviewing court shall not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the ALJ. *Craig*, 76 F.3d at 589. "Ultimately, it is the duty of the [ALJ] reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

<u>Legal Framework</u>

A claimant under 18 years' old is "disabled" under the Social Security Act if he has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382(a)(3)(C)(i).

There is a three-step sequential evaluation process to determine if a minor is disabled.

<u>Step one</u>. The ALJ determines whether the claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled.

<u>Step two</u>. The ALJ determines if the claimant has "an impairment or combination of impairments that is severe." If not, the claimant is not disabled. A severe impairment is one that causes more than a minimal affect on a claimant's ability to function. A "slight abnormality or combination of slight abnormalities that causes no more than minimal functional limitations" is not severe.

<u>Step three</u>. The ALJ determines if such impairment or combination of impairments "meet, medical equal, or functionally equal the listings." If so, the claimant is disabled.

*See* 20 C.F.R. § 416.924(a)–(d).

To find that an impairment functionally equals a listing, the adjudicator must find that the impairment results in a "marked" limitation in two domains of functioning or "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). The domains are broad areas of functioning that are meant to capture all of what a child can or cannot do. 20 C.F.R. § 416.926a(b)(1). The domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

A "marked" limitation in a domain is one in which a claimant's impairment(s) interferes seriously with his ability to independently initiate, sustain, or complete activities. It is a limitation that is "more than moderate" but "less than extreme." Day-to-day functioning may be seriously

limited when the claimant's impairment(s) limits only one activity or when their interactive and cumulative effects limit several activities. A "marked" limitation is equivalent of the functioning expected on standardized testing with scores of at least two, but less than three, standard deviations below the mean. 20 C.F.R. § 416.926a(e)(2)(i).

An "extreme" limitation in a domain means an impairment interferes very seriously with the claimant's ability to initiate, sustain, or complete activities. It is a limitation that is "more than marked," although it "does not necessarily mean a total lack or loss of ability to function." Day-to-day functioning may be very seriously limited when impairments limit only one activity or when the interactive and cumulative effects of the impairments limit several activities. An "extreme" limitation is the equivalent of the functioning expected of standardized testing with scores at least three standard deviations below the mean. 20 C.F.R. § 416.926a(e)(3).

After the Commissioner awards SSI benefits to a minor, the Commissioner must periodically review a child's continued eligibility for benefits. 20 C.F.R. § 416.994a(a). In conducting this review, first the Commissioner determines whether the claimant experienced medical improvement since the comparison point decision, or "CPD." If not, then the claimant continues to remain disabled. 20 C.F.R. § 416.994a, (a)(1), (b)(1). Second, if the CPD was made after January 2, 2001, and there has been medical improvement, the Commissioner determines if the impairment the claimant had at the CPD now meets or medically equals the same listing it met or medically equaled at the time of the CPD, or whether the impairment functionally equals the listings. 20 C.F.R. § 416.994a(a)(1), (b)(2). Third, if the child's impairment no longer meets or medically equals the same listing it did at the time of the CPD, and does not functionally equal the listings, the Commissioner determines whether the claimant is currently disabled under the three-step sequential analysis in 20 C.F.R. § 416.924 for determining whether a child is disabled in the first instance.

Background

Plaintiff does not object to the R&R's recitation of the claim history of this case. Dkt. 22 at 2–6; Dkt. 23. The Court will adopt that portion of the R&R into this opinion.

Tammy is H.J.'s mother, and H.J. is a minor. In a June 5, 2007 decision, the Commissioner found H.J. disabled and entitled to SSI on account of his autism spectrum disorder. R&R at 2, 4; Administrative Record ("R.") 15, 97. This was the last favorable medical determination of H.J.'s disability, and is therefore his CPD. R. 15, 97. The Commissioner determined, at the time of the CPD, H.J.'s autism spectrum disorder was a medically determinable impairment that functionally equaled the listings, and which resulted in marked limitations in two domains (attending and completing tasks, and interacting and relating with others), and a less than marked limitation in acquiring and using information. R&R at 4; R. 15–16.

On December 30, 2015, on a periodic review of H.J.'s continued eligibility for SSI, the agency found that H.J. no longer met the disability requirements, which decision was upheld on reconsideration. R&R at 5; R. 69–72; *see also* R. 73–105. Tammy sought review of the decision before an administrative law judge, who conducted a hearing on January 9, 2018. R. 35–65, 106.

On July 16, 2018, the ALJ issued a decision which also concluded that H.J. was no longer disabled. R&R at 5; R. 12–29. The ALJ found medical improvement had occurred as of December 30, 2015. R. 16. The ALJ further found that, since December 30, 2015, the impairments H.J. had at the time of the CPD have not functionally equaled the listings of impairments. R. 16–22. Next, the ALJ determined that, since December 30, 2015, H.J. had two severe impairments: autism spectrum disorder and attention deficit hyperactive disorder, or "ADHD." R. 22. However, the ALJ concluded that, since December 30, 2015, those impairments or combination of impairments did not meet or medically equal the listings, R. 22–23, nor did they functionally equal the listings, R. 23–29. The ALJ found that since December 30, 2015, H.J. has had a less than

5

marked limitation in three domains: acquiring and using information, attending and completing tasks, and interacting and relating with others, R. 17–19, 27–28, but no marked limitations or extreme limitations in any domain, R. 22, 29.

In a thorough R&R, the Magistrate Judge concluded that substantial evidence supported the ALJ's determination that H.J. does not have an impairment or combination of impairments that functionally equals the listings. R&R at 20. Accordingly, the R&R recommended that this Court deny Tammy's motion for summary judgment and grant the Commissioner's motion for summary judgment. *Id.*

In her objections to the R&R, Tammy principally challenges the ALJ's determinations that H.J. suffered only from a less than marked determination in two domains: acquiring and using information and attending and completing tasks. Dkt. 23. The Commissioner filed a response to Tammy's objections, arguing that the Court should affirm the ALJ's final decision and adopt the R&R in full. Dkt. 24.

<u>Acquiring and Using Information</u>

This domain addresses how well a claimant acquires or learns information and how well he uses the information he has learned. 20 C.F.R. § 416.926a(g). A school-age child should be able to learn to read, write, and do math, and discuss history and science, and to use those skills in academic and daily living settings, as well as share information, ask questions, express one's own ideas, and understand and respond to others' opinions. 20 C.F.R. § 416.926a(g)(2)(iv). The regulation gives examples of limited functioning in this domain with the caveat that they do not necessarily describe a "marked" or "extreme" limitation. These include a claimant's inability to demonstrate understanding of words about space, size, or time (e.g., in/under; big/little; morning/night); inability to rhyme words or the sounds in words; difficulty recalling important things learned in school yesterday; difficulty solving math questions or computing arithmetic

answers; and speaking only in short, simple sentences and having difficulty explaining what he means. 20 C.F.R. § 416.926a(g)(3).

An SSA ruling further emphasizes the importance of school records in analyzing a child's functioning in this domain:

> Because much of a preschool or school-age child's learning takes place in a school setting, preschool and school records are often a significant source of information about limitations in the domain of "Acquiring and using information." Poor grades or inconsistent academic performance are among the more obvious indicators of a limitation in this domain provided they result from a medically determinable mental or physical impairment(s). Other indicators in school records that a mental or physical impairment(s) may be interfering with a child's ability to acquire and use information include, but are not limited to: [s]pecial education services, such as assignment of a personal aide who helps the child with classroom activities in a regular classroom, remedial or compensatory teaching methods for academic subjects, or placement in a self-contained classroom.

Social Security Ruling 09-3p, Title XVI: Determining Childhood Disability – The Functional Equivalence Domain of "Acquiring and Using Information," 2009 WL 396025, at *3 (Feb. 17, 2009) ("SSR 09-3p"). This ruling also provides that, "[a]lthough we consider formal school evidence (such as grades and aptitude and achievement test scores) in determining the severity of a child's limitations in this domain, we do not solely rely on such measures." *Id.* It is also important to consider evidence about "the child's ability to learn and think from medical and other non-medical sources," and also to assess limitations "in this ability in all settings, not just school." *Id.*

The ALJ noted that H.J.'s mother indicated that he had difficulty in math and is unable to comprehend what he reads or write a paragraph. R. 27. The ALJ further noted that "a variety of the claimant's teachers also reported that [he] had difficulty with understanding and participating in class discussions and providing oral explanations and descriptions." *Id.* And the ALJ noted that H.J. has "difficulty organizing his thoughts." *Id.*

However, the ALJ found more significant the fact that, despite such difficulties, the claimant "improved in all his classes during the 2017 school year," with average grades ranging from A's to D's, and that he had B's and C's in Math and English. The ALJ further noted that his English teacher considered it to be H.J.'s strongest subject and said he was an active participant in group work and a strong reader. *Id.*

The ALJ also found that H.J. "is able to do his work independently," and, though he "rushes through his work," he is also able to "identify his mistakes when he goes back to check his work." R. 27. And the ALJ further noted that H.J. plays video games, engages in personal care with reminders, rides bikes, and goes hunting and swimming. Accordingly, the ALJ concluded that the weight of evidence supported a finding of a less than marked limitation in the domain of acquiring and using information. *Id.*

Tammy argues that the ALJ erred in finding H.J. had a less than marked limitation in this domain. Dkt. 23 at 1–3.

First, Tammy argues that the ALJ insufficiently considered evidence from H.J.'s teachers, by, for instance, providing only one sentence of description on each teacher's assessment, not citing their "severity ratings," and by merely stating that he assigned "some weight" to their opinions without explaining what that meant. *Id.* at 2.

Tammy fails to recognize that the ALJ expressly and thoroughly considered H.J.'s teachers' evaluations. For instance, the ALJ referred throughout his decision to those evaluations and drew from the evidence therein, *e.g.*, R. 17–18, 26–28, not just in the short summaries that he provided about what each teacher said, R. 26. Notwithstanding Tammy's complaint that the ALJ did not specifically refer to the teachers' severity ratings, those ratings were nonetheless fully consistent with the ALJ's conclusions. As the R&R noted, the questionnaires relating to this domain "overwhelmingly found no problems and slight problems, only infrequently found

obvious problems, only once found a serious problem, and never found a very serious problem." Dkt. 22 at 14. Indeed, the ALJ cited those areas in which H.J.'s teachers found he faced the most difficulties (as reflected in the "severity ratings"), namely, in H.J.'s ability to understand and participate in class discussions and provide organized oral explanations. R. 27. The Court also considers that the ALJ amply explained what he meant by assigning "some weight" to the teachers' evaluations. R. 26–28. In explaining why he assigned "some weight" to the teachers' opinions, the ALJ specifically noted problems that H.J.'s teachers raised in their evaluations, such as difficulty maintaining attention and focus to complete tasks and rushing through schoolwork. R. 26. But the ALJ further found such concerns counterbalanced or outweighed by other evidence in the record, which showed H.J.'s attention and communication improved with treatment; H.J.'s grades, which were characterized as successful with "minimal support"; and evidence from medical providers who conducted medical examinations of H.J. R. 26.

Next, Tammy argues that the ALJ failed to "properly consider the extensive accommodations provided to H.J. at school to assist him in acquiring and using information," such as 90 minutes of resource support, breaks, assistance with directions, flexible seating, and the like. Dkt. 23 at 2. Indeed, the kind, level and frequency of special education or other accommodations "can provide helpful information about the severity of the child's impairment(s)." SSR 09-3p, 2009 WL 396025, at *3. Contrary to Tammy's argument, however, the ALJ's decision plainly reflects that he considered H.J.'s accommodations. For instance, the ALJ recognized and described those accommodations numerous times in his opinion. *E.g.*, R. 24 ("the claimant is in special education and requires accommodations such as assistance with directions, extra time to complete assignments, and a flexible testing schedule") (citing R. 504); *see also* R. 25. In addition, the ALJ's decision in this respect specifically cited school records that provided H.J.'s grades and a description of his academic performance and described his accommodations. R. 27, 503–04. These

records reflected that H.J. was "successful in all classes" and needed only "minimal support." R. 26, 27. The ALJ found this evidence persuasive. Accordingly, substantial evidence supported the ALJ's characterization of the support afforded H.J., even if Tammy would characterize it differently.

Tammy also contends that the ALJ improperly compared H.J. to his peers in special education classes rather than his peers without limitations. Dkt. 23 at 2–3. In her view, the R&R also erroneously concluded that the ALJ considered findings by several of H.J.'s teachers, when, "in reality, the ALJ *solely relied* upon the opinion" of one teacher, "who also compared H.J.'s performance to fellow students in a special education math class of only 10 students …." Dkt. 23 at 2–3 (emphasis added). The record does not support Tammy's argument. In making his finding concerning this domain, the ALJ expressly cited opinions from at least five of H.J.'s teachers. R. 27 (citing R. 233, 277, 285, 293, 302). The common questionnaire each teacher filled out instructed that the student be "[c]ompared to the functioning of same-aged children without impairments." R. 233, 277, 285, 293, 302. To the extent Tammy challenges the ALJ's focus on H.J.'s math teacher's evaluation, which was for a class "structured to be slow paced," R. 302, the ALJ further considered all of H.J.'s grades and found that he "improved in all classes consistently during the 2017 school year." R. 27; R. 503–04.

Finally, Tammy challenges the ALJ's reliance on evidence that H.J. "is able to play video games, engage in personal care with reminders, ride a bicycle, [and] go hunting and swim," in the ALJ's assessment of this domain. Dkt. 23 at 3. Tammy argues that the ALJ "never explained how these activities" supported his conclusion. *Id.* Evidence about a child's ability to "learn and think" and of any limitations thereof, should be assessed "in all settings, not just in school." SSR 09-3p, at *3. While the ALJ could have better explained how such evidence supported his findings in this

domain, the Court concludes that this evidence is not necessary to its determination that substantial evidence supported the ALJ's decision in this regard.

Accordingly, the Court concludes on de novo review of the R&R that substantial evidence supported the ALJ's determination that H.J. had a less than marked limitation in the domain of acquiring and using information. Tammy's objection in this regard is overruled and the Court will adopt the R&R on this issue.

Attending and Completing Tasks

This domain addresses how well a claimant can focus and maintain his attention, how well he begins, carries through and finishes his activities, and includes the pace at which he performs activities and the ease with which he changes activities. 20 C.F.R. § 416.926a(h). A school-age child should be able to focus his attention in a variety of situations to follow directions, remember and organize school materials, and complete classwork and homework assignments; concentrate on details and not make careless mistakes; and change activities or routines without distracting oneself or others and stay on task and in place when appropriate. 20 C.F.R. § 416.926a(h)(2)(iv).

The ALJ determined that H.J. had a less than marked limitation in attending and completing tasks. R. 27. The ALJ noted that H.J. and Tammy both reported that he had difficulty maintaining attention to complete tasks. R. 27; *see also* R. 25. The ALJ also cited questionnaires from H.J.'s teachers which indicated that he "does not complete assignments, does not ask for help when needed, is easily distracted and needs prompting to start and finish assignments as well as redirection." R. 27. And the ALJ noted that H.J.'s resource teacher had written that he is easily distracted and does not ask for assistance when needed. R. 27.

However, the ALJ found that, "with medication, the claimant's ability to maintain attention and focus to complete tasks improved." R. 27. In so finding, the ALJ cited evidence from H.J.'s doctor Teresa Brennan, M.D., who had treated H.J. for both his autism disorder and ADHD over

a period of several years. R. 27. In so finding, the ALJ specifically cited Dr. Brennan's treatment notes from November 2015 (R. 336), May 2016 (R. 394), November 2016 (R. 543), May 2017 (R. 541), and November 2017 (R. 538). R&R at 7–8. While in April 2015, Dr. Brennan had noted that H.J.'s "[c]urrent medications do not appear to be adequately covering symptoms" from attention deficit disorder with hyperactivity, R. 339, Dr. Brennan then made several adjustments to H.J.'s medication. R&R at 7. After that, Dr. Brennan found H.J.'s attention improved. For example, in May 2016, Dr. Brennan found that H.J. "has shown improvement sustaining attention in tasks and being easily distracted." R. 394. In November 2016, she found that H.J. "has shown improvement following through on instructions and finishing schoolwork," and that his "current medications appear to be adequately covering symptoms," R. 543, and still again in May 2017, she found that H.J. was "doing better focusing," R. 541. *See also* R&R at 7; R. 27 (ALJ decision).

In addition, the ALJ found significant H.J.'s overall academic performance in his grades which fell in the range from A's to D's. H.J.'s "IEP in 2017 shows he was successful in all classes, needed minimal support and had an improved attention span and reduced hyperactivity." R. 27. The ALJ also cited the questionnaire response from H.J.'s math teacher (a class in which H.J. had difficulty), in which the teacher said he compared well with his peers and maintained focus in his classwork. R. 27. Further, the ALJ cited the opinions of state agency consultants who opined that H.J. had a less than marked limitation in attending and completing tasks, R. 28—opinions which the ALJ gave partial weight, R. 25. And the ALJ further noted H.J.'s ability to ride a bicycle, play video games and swim. R. 27–28. For these reasons, the ALJ found that the weight of the evidence supported a finding that H.J. had a less than marked limitation in this domain of attending and completing tasks. R. 28.

Tammy argues that the ALJ erred in finding H.J. had a less than marked limitation in this domain. Dkt. 23 at 3–7.

First, Tammy focuses on the evaluation from H.J.'s resource teacher, who determined in her assessment of this domain that H.J. had a "very serious problem" in two areas: "working without distracting [him]self or others," and "working at reasonable pace/finishing on time." Dkt. 23 at 5–6; R. 278. Tammy argues that the ALJ and R&R erred in treating this teacher as "possessing some sort of 'outlier' opinion that is at odds with the other teacher questionnaires …." Dkt. 23 at 6. But the record reflects that characterization. The Commissioner's chart compiling the teachers' questionnaire responses about this domain demonstrates that *no other teacher* besides H.J.'s resource teacher considered that he had a "very serious problem" in either these two areas. Dkt. 24 at 5–6.

To the contrary, in the area of working without distracting himself or others: four other teachers concluded that H.J. had "no problem" in this area; one thought he had a "slight problem"; and the last thought it a "serious" but not "very serious" problem. *Id.* Similarly, concerning H.J.'s ability to work at a reasonable pace (in which H.J.'s resource teacher thought he had a "very serious problem"), five other teachers thought H.J. had "no problem" or only a "slight problem." The last teacher saw it as a "problem" but not a "serious" or "very serious" problem for H.J. *Id.* At bottom, there certainly was substantial evidence from the teachers' evaluations supporting the conclusion that H.J. did not have a serious or very serious problem in these areas. *See* Dkt. 24 at 5–6.

Tammy further contends that the ALJ's decision in this domain also ignored statements from H.J.'s computer information systems teacher, history teacher, and math teacher, that H.J. required extra help redirecting and refocusing, and that he does not complete his homework assignments on time. Dkt. 23 at 5–6. But, as the R&R describes, the ALJ did consider this evidence from these teachers. *See, e.g.*, R&R at 12; R. 26–27. Indeed, the ALJ cited each of these teachers' evaluations when recognizing that "various teachers indicated claimant does not complete

13

assignments, does not ask for help when needed, is easily distracted and needs prompting to start and finish assignments as well as redirection." R. 27 (citing R. 312 (computer information systems teacher); R. 286 (history); and R. 303 (math)); *see also* R. 26 (noting such concerns over H.J.'s difficulty "maintaining attention and focus to complete tasks"). The ALJ did not ignore this evidence. Rather, the ALJ assigned "some weight" to the opinions of H.J.'s teachers and considered them alongside other evidence in the record. R. 26–27.

Tammy again objects to the ALJ's findings by asserting that two of H.J.'s teachers (math and earth science teachers) erroneously compared H.J. to his peers in special education classes rather than comparing them to peers without limitations. Dkt. 23 at 4–5. To be sure, the regulations state that the claimant's functioning is considered "compared to the performance of other children [his] age who do not have impairments." 20 C.F.R. §§ 416.924b(a)(1), 416.926a(b). But even though H.J.'s math class was "structured to be slow paced," the teacher's evaluation is far from clear that she was comparing H.J. to other students with impairments in her assessments of H.J.'s activities. R. 303. Indeed, the evaluation itself provides that it should be conducted such that the claimant be "compared to the functioning of same-aged children without impairments," and no further elaboration by H.J.'s math teacher in that domain indicated that she was considering his performance vis-à-vis students with impairments. R. 303. Moreover, even if the evaluation did compare H.J. with students with impairments, the ALJ's determination on this domain relied on substantial other evidence, including grades in all of his classes, *e.g.*, R. 27, 355, 503, involving comparisons of H.J. to peers without impairments.

Tammy also argues that the ALJ erred in relying on state agency opinions because they were rendered prior to the teacher questionnaires and updated school records. Dkt. 23 at 7. The ALJ, however, only afforded them "partial weight" notwithstanding the fact that he found their opinions "balance[d] and objective," precisely because "later records" like those Tammy

mentioned provided evidence of H.J.'s occasional periods of difficulty concentrating, among other things. R. 25. The record and ALJ's decision plainly contradict Tammy's argument on this issue. In any event, the Court finds no error in the ALJ's reliance on the state agency opinions.

Lastly, Tammy asserts that the ALJ erred in its reliance on medical records of H.J. in support of a determination that H.J.'s ability to focus had improved when several of his teachers noted difficulties H.J. faced in concentrating. Dkt. 23 at 7. But this argument does little more than rehash arguments already made and rejected. The ALJ expressly cited those teacher evaluations cited by Tammy and noted their concerns, but nonetheless, the ALJ found consistent and more persuasive evidence, including H.J.'s grades, his 2017 IEP that "show[ed] [that] he was successful in all classes, needed minimal support and had an improved attention span and reduced hyperactivity," and his medical records. R. 27–28. At bottom it appears Tammy would have this Court "re-weigh conflicting evidence" or "substitute [its] judgment" for that of the ALJ, which the Court cannot do. *Craig*, 76 F.3d at 589.

Accordingly, the Court concludes on de novo review of the R&R that substantial evidence supported the ALJ's determination that H.J. had a less than marked limitation in the domain of attending and completing tasks. Tammy's objection in this regard is overruled. The Court will adopt the R&R on this issue.

<u>Consistency of H.J.'s Testimony with the Record</u>

Lastly, Tammy disputes the ALJ's conclusion that H.J.'s (and Tammy's) statements about the intensity, persistence, and limiting effects of his symptoms are not entirely consistent with the record. Dkt. 23 at 8–10.

The ALJ considered H.J.'s testimony as well as that of his mother Tammy. *E.g.*, R. 23–24. The ALJ noted evidence from H.J. that his school year was "going pretty good," and that he was able to understand his schoolwork and participate in class discussions. R. 23; R. 60 (Q. "Are you

understanding your classes and what your teachers are trying to teach you or explain to you?" A. "Yeah."). But the ALJ also considered evidence from H.J. that "he has difficulty completing his schoolwork because he gets distracted" and that he "needs reminders from his mother to get ready for school and to complete his homework." R. 23–24; R. 60 (A. "Sometimes I get distracted, but most of the time I finish [schoolwork]."). The ALJ further considered Tammy's testimony that, among other things, H.J. "does not complete tasks because he becomes distracted" and "has difficulty with concentration." R. 24; *e.g.*, R. 43 (Q. "How else does his ADHS impact him or affect him?" A. "Like with the schoolwork, he doesn't complete it. He doesn't finish it. He'll start one task, then he'll move on to another one, and then he gets off track and forgets what he's doing altogether ….").

However, the ALJ further found that "the statements concerning the intensity, persistence and limiting effects of the claimant's symptoms are not entirely consistent with the objective medical and other evidence for the reasons explained below." R. 24. These included, among other things, the medical records from Dr. Brennan that showed over time that H.J.'s "ability to maintain focus and attention to complete tasks … improved with treatment." R. 25. And they included H.J.'s grades and his "IEP in 2017 [that] shows he was successful in all classes and had an improved attention span and reduced hyperactivity." R. 25; *see also, e.g.*, R. 503 ("[H.J.] has been successful in all of his classes consistently throughout the school year with his supports."); *id.* (showing scores of "average" inattention and hyperactivity/impulsivity); R. 504 (while noting that H.J. "often has difficulty concentrating," concluding that he "has been successful in his classes with minimal support …").

Notwithstanding Tammy's arguments to the contrary, the Court considers that the ALJ thoroughly addressed the testimony of both H.J. and Tammy, weighed it against other evidence, and explained why he concluded that certain of their statements about the "intensity, persistence

and limiting effects of [H.J.'s] symptoms are not entirely consistent with the objective medical and other evidence" in the record. R. 24. The ALJ plainly did not ignore the fact that H.J. received accommodations. R. 25 ("although he has accommodations in school, the record shows the claimant has been successful with minimal support"). Again, it is not this Court's role to "re-weigh conflicting evidence" or "substitute [its] judgment" for that of the ALJ, *Craig*, 76 F.3d at 589, but rather to determine whether substantial evidence supported the ALJ's opinion, *Biestek*, 139 S. Ct. at 1154. The Court finds no error in the ALJ's treatment of H.J.'s or Tammy's testimony or any other argument Tammy raised in her third objection. Accordingly, on de novo review of the R&R, the Court will overrule Tammy's third objection and affirm and adopt the R&R on this issue.[2]

Conclusion

The Court concludes that substantial evidence supports the ALJ's findings that H.J. has less than marked limitations in the domains of acquiring and using information and attending and completing tasks. The Court further concludes that substantial evidence supports the ALJ's finding that H.J.'s disability ended as of December 30, 2015, and that the claimant has not become disabled again since that date. Accordingly, the Court will overrule Tammy's objections, adopt the R&R, and affirm the final decision of the ALJ.

The Clerk of Court is directed to send this Memorandum Opinion to all counsel of record.

ENTERED this  30th  day of November, 2020.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

---

[2] While the Court finds no error in the ALJ's reference to H.J.'s ability to hunt, fish, and play videogames, the Court need not rely on that evidence to support its determination that the ALJ's finding was supported by substantial evidence.